# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

GERALDINE R. BUTLER,

       Plaintiff,

    v.                                      Case No. 04-C-0724

SIMPLEXGRINNELL, L.P.,

       Defendant.

---

## DECISION AND ORDER

---

Plaintiff Geraldine R. Butler filed this civil rights action, alleging that Defendant SimplexGrinnell, L.P., terminated her employment because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff also alleges various acts of on-the-job sex discrimination by defendant prior to her termination. Discovery has concluded and the parties have filed cross-motions for summary judgment. For the following reasons, plaintiff's motion will be denied and defendant's motion will be granted.

## BACKGROUND

In granting defendant's motion for summary judgment, the court sets forth the facts in the light most favorable to plaintiff, the non-moving party. *Fisher v. Lovejoy*, 414 F.3d 659, 661(7th Cir. 2005). Defendant sells, installs, inspects and maintains fire alarm systems, phone switches, paging systems, closed circuit television, access control systems, and nurse call systems throughout the United States. (Def.'s PFOF ¶ 4; Pl.'s PFOF ¶¶ 4, 6.) Defendant hired plaintiff on April 2, 1997, as a Time Data Support Technician in its Milwaukee office. (Def.'s PFOF ¶ 5.) Her job duties were to travel to customer sites to repair time clocks. (*Id.* ¶ 6.) In January of 1998, plaintiff

transferred from defendant's Milwaukee branch to its Green Bay branch. (*Id.* ¶ 9.) Plaintiff's job duties expanded at this point to include helping with fire alarm inspections. (*Id.* ¶ 12.)

Plaintiff received most of her training on the job. (Def.'s PFOF ¶¶ 7, 19.) In October, 1998, plaintiff attended basic electronics school for two weeks at defendant's facility in Massachusetts. At one of the classes her name tag read "Jerry" instead of "Geri." (Pl.'s PFOF ¶ 20.) When she pointed this out, the instructor commented that she had a boy's name and that she was in the wrong class. (*Id.* ¶ 22.) On another occasion an instructor told her to "shut her hole" in response to a greeting, and her questions were ignored in class. (*Id.* ¶¶ 23-24.) While plaintiff considered herself adequately trained (Def.'s PFOF ¶ 22), she requested additional classes on a number of occasions. Some of her requests were ignored, others were approved, but the classes always fell through for one unspecified reason or another. (Pl.'s PFOF ¶¶ 32-37.)

Defendant's Green Bay branch has approximately thirty-five employees. (Pl.'s PFOF ¶ 5.) Jeff Carlson was District General Manager and head of the Green Bay branch. (Def.'s PFOF ¶ 10.) Plaintiff's supervisor was Steve Tomcek. (*Id.* ¶ 11.) Initially, plaintiff worked with Cameron Pahr and Lyle Freiberg. (Def.'s PFOF ¶ 13; Pl.'s Resp. ¶ 13.) On one occasion Pahr, who evidently served as the foreman or supervisor of the group, made plaintiff, rather than Freiberg, crawl around on ductwork to check out devices. (Butler Dep. at 63.) Another time, Pahr condescendingly told plaintiff to just "read the screen" during a job. (Butler Dep. at 64-69.) Pahr later apologized for his tone, and he and plaintiff had no further issues. (*Id.*)

In December of 2001, Chuck Tincher and Kathy Halvorsen replaced Steve Tomcek as plaintiff's supervisors. Plaintiff contends that her employment conditions deteriorated significantly thereafter. Specifically, plaintiff was denied overtime when she was working on a fire alarm panel

2

at a jail, forcing her make a two-to-three hour drive home and to return the following morning for one hour of work. (Pl.'s PFOF ¶¶ 44, 46-47.) Halvorsen also took away plaintiff's company cell phone. (*Id.* ¶ 49.) Tincher and Halvorsen also terminated an arrangement whereby plaintiff, with Jeff Carlson's consent, had previously been reimbursed for half of the cost of a storage unit where plaintiff stored some of her work supplies and equipment. (Pl.'s PFOF ¶¶ 52-54; Def.'s PFOF ¶¶2 82-85.) Finally, Halvorsen denied plaintiff $4.00 in reimbursement for two MGD Lites that plaintiff consumed on an overnight trip. (Def.'s PFOF ¶¶ 77-81.)

In early 2003, defendant decided to reduce its workforce by 10%. (Pl.'s PFOF ¶ 60; Def.'s PFOF ¶ 33.) Jeff Carlson's supervisor, Greg Gaither, directed him to cut costs in the Green Bay office and to terminate at least one individual. (Def.'s PFOF ¶ 34.) Chuck Tincher and Kathy Halvorsen examined where the growth in defendant's business was occurring and determined that the territory serviced by plaintiff was shrinking rather than growing. (Def.'s PFOF ¶¶ 35-36.) Tincher and Halvorsen told Carlson that the Green Bay office could use other employees to perform plaintiff's duties without severely impacting the services they provided to customers. (Def.'s PFOF ¶ 37.) Carlson decided to terminate plaintiff. He and Tincher notified plaintiff of her termination on February 24, 2003. (Pl.'s PFOF ¶ 62; Def.'s PFOF ¶ 39.)

Plaintiff received exemplary performance reviews from her supervisors throughout her employment with defendant. (Pl.'s PFOF ¶ 56.) The only reason given plaintiff for her termination was that defendant was undergoing a "reduction in force." (Pl.'s PFOF ¶¶ 63-64; Def.'s PFOF ¶¶ 40-41.) Carlson claims that he terminated plaintiff as part of a company-wide reduction in force, and that he settled on her as the employee to terminate because others could do her work without

3

severely impacting the services defendant provided to its customers.  (Carlson Dep. at 23-24.)

Plaintiff argues that her sex was the real reason for her termination.

## ANALYSIS

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought.  Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323.  There is no requirement that a moving party who does not bear the burden of proof establish that

4

the element does not exist. In other words, a moving party who does not have the burden of proof at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality–either admissible documents or attested testimony, such as that found in depositions or in affidavits–demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).

Before it turns to the substance of plaintiff's complaint, the court notes that plaintiff did not file her discrimination charge with the Wisconsin Department of Workforce Development, Equal Rights Division until August 13, 2003. The initial charge referred only to plaintiff's termination on February 24, 2003. On November 26, 2003, plaintiff amended her charge to include her claims

5

of on-the-job discrimination. The record does not reveal when most of the alleged on-the-job discrimination took place. It is clear, though, that the derogatory comments during plaintiff's training in Massachusetts took place in 1998. Because these comments occurred more than 300 days before plaintiff filed her charge, they are not actionable in this case. 42 U.S.C. § 2000e-5(e)(1); *National R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 112-113 (2002).[1]

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms and conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may meet her *Celotex* burden on summary judgment by producing direct evidence that the defendant took an adverse employment action against her because of her sex. If that is not possible, the plaintiff can still prove her case under the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Where, as here, the plaintiff's job is not eliminated, but instead is absorbed by other employees, what the Seventh Circuit calls a "mini-RIF," *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000), the plaintiff, to establish a prima facie case under *McDonnell Douglas* must show that:

    (1) she belongs to some protected class;

    (2) she performed her job satisfactorily;

---

[1]Though not themselves actionable, the comments could be considered, if relevant, in deciding whether defendant bore any discriminatory animus toward plaintiff. However, the comments cited by plaintiff have no relevance to this issue since they are not sexist and were not made by anyone with decision-making authority over plaintiff. *See Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir.2001) (holding that sexist comments "are relevant only when attributable to the person who made the adverse employment decision").

6

(3) she suffered an adverse employment action; and

(4) her responsibilities were absorbed by employees not in the protected class.

*Bellaver*, 200 F.3d at 493-95. Once plaintiff makes out a prima facie case, the burden shifts to her employer to present a legitimate reason for the adverse employment action. *Id.* "If the defendant presents no evidence in response [to the plaintiff's prima facie showing], the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (emphasis added).

Here, it is unquestioned that defendant terminated plaintiff, a female, even though she was performing her job in a satisfactory manner, and that defendant did not terminate any males in its Green Bay branch. Defendant has presented evidence that it had a nondiscriminatory reason for terminating plaintiff. The question is whether plaintiff has presented evidence that a reasonable jury could conclude rebuts defendant's evidence. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1183 (7th Cir. 2002) (holding that where plaintiff presented some evidence of pretext, but not enough to support a jury verdict in his favor, defendant was entitled to summary judgment).

Plaintiff argues that defendant hired several male technicians after it fired her, rebutting its contention that it fired her because it didn't need her services. (Pl.'s Br. in Opp. at 9; Freiberg Dep. at 38, 47.) One of these men, at most, appears to have taken on some of plaintiff's responsibilities, and he was not hired until over two years after defendant terminated plaintiff. (*Id.* at 38.) The fact that defendant apparently waited over two years to replace plaintiff supports, rather than undercuts, defendant's contention that it terminated her because it did not need her services.

7

Plaintiff also argues that defendant retained similarly-situated male employees with less seniority than her. (Butler Dep. at 165-167; Carlson Dep. at 25-30.) Plaintiff notes that defendant's Green Bay office terminated an administrative assistant as part of the reduction in force, and that the person selected for termination was selected because she had low seniority. (Pl.'s Br. in Opp. at 9; Carlson Dep. at 56.) However, the law does not require defendant to make termination decisions on the basis of seniority, or to terminate inspectors and administrative assistants for the same reasons. Pointing out that plaintiff had more seniority than males who were not terminated does nothing to show that defendant's stated, and legitimate, reason for terminating plaintiff was pretextual.[2] Plaintiff must show that males that were retained by the defendant were similarly situated. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043-44 (7th Cir. 2000). This she has failed to do. The only male employee she specifically mentions in connection with her termination claim, Collin Avery, worked in the geographic area that comprised 70-75 percent of the defendant's business base. (Carlson Dep. at 25-26.) Plaintiff, on the other hand, worked in an area where business was down and the technicians could more easily absorb the work of the only inspector assigned there. (Def.'s PFOF ¶ 38.)

While both parties shy away from it in their arguments, plaintiff does adduce some evidence that defendant's stated reason for her termination is pretextual. Plaintiff cites a February 3, 2003, letter from Jeff Carlson to Greg Gaither, in which Carlson states that plaintiff's performance "Needs

---

[2]Plaintiff notes that at the time it terminated her, plaintiff put another employee, a salesman named Curt Miller, on a "Strategic Success Plan"–an opportunity it never afforded plaintiff. (Carlson Dep. at 32-34.) As a technician, plaintiff was not similarly situated to a salesman, and defendant was not required to–indeed, could not–offer her the same opportunities it offered its salesmen. *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (1995).

8

Improvement" and gives the following rationale for recommending that plaintiff be terminated

immediately:

> We have justification to terminate [plaintiff] for cause[,] however a workforce
> reduction may be cleaner and severance would be minimal and acceptable to the
> District. Given past history I would expect some rebuttal from Geri if terminated
> for cause.

(Pl.'s Ex. 15.) The problem with this evidence is that it suggests that plaintiff's stated reason for

terminating plaintiff is a pretext, not for sex discrimination, but for terminating her for cause. Proof

of this will not avail plaintiff.[3] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148

(2000) (holding that even where plaintiff has shown that employer's proffered reason was

pretextual, "an employer would be entitled to judgment as a matter of law if the record conclusively

revealed some other, nondiscriminatory reason for the employer's decision"). Accordingly, the

court concludes that plaintiff has failed to rebut defendant's evidence of a legitimate reason for her

termination.

Plaintiff complains of numerous actions by defendant prior to her termination. None of

these actions were, on their face, based on plaintiff's sex.[4] They are relevant to this case, if at all,

---

[3]Both parties shy away from claiming that plaintiff was terminated for cause, for obvious
reasons. For plaintiff so to contend would deprive her of the opportunity to utilize the *McDonnell-
Douglas* burden-shifting method, which requires proof that the plaintiff was performing her job in
a satisfactory manner. *Little*, 71 F.3d at 642 n. 3. Defendant would not want to suggest that it was
less than forthright in explaining to plaintiff and the court the reasons for plaintiff's termination.

[4]The only action that implicated plaintiff's sex occurred in 1998 (outside the limitations
period for this case), when an instructor at plaintiff's training session commented that her name was
a "boy's name." *Cf. Zabkowicz v. West Bend Co.*, 589 F. Supp. 780, 784 (E. D. Wis. 1984) ("Title
VII does not serve as a vehicle for vindicating the petty slights suffered by the hypersensitive.")
Plaintiff also stated that she believes Pahr made his condescending remark to her because she is
female. (Butler Dep. at 64-65.) A plaintiff's mere belief that discrimination against her was
motivated by her sex is insufficient to support a Title VII claim. *Cf. Gatling v. Atlantic Richfield
Co.*, 577 F.2d 185, 188 (2d Cir. 1978).

only insofar as they help plaintiff make out a prima facie case under *McDonnell-Douglas*. But "not everything that makes an employee unhappy is an actionable adverse action" under *McDonnell-Douglas*. *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir.2000) (citations omitted). "To be adverse, the action must be materially adverse, 'meaning more than a mere inconvenience or an alteration of job responsibilities.'" *Harbison v. Prestige Group, Inc.*, 2001 WL 395786, at *28 (S. D. Ind. March 16, 2001) (quoting *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir.2000)). Material adverse actions include only those that effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff contends that Pahr once required her, rather than a male co-worker, to "crawl[] around on ductwork to check out devices." (Butler Dep. at 63.) While this work may have been "dirty," (*id.*), being assigned to do it does not compare to being fired, passed over for promotion, or reassigned to a job with significantly different duties. Neither does the single instance when Pahr told plaintiff, in a condescending tone of voice, to just "read [something] on the screen." (Butler Dep. at 64-67.) Plaintiff also fails to explain why the loss of her cell phone led to a significant change in her employment status, as opposed to a "mere inconvenience." *Harbison*, 2001 WL 395786, at *28. Plaintiff was able to use a customer's phone or a pay phone to call her supervisor, obviating the need for a cell phone in the field.[5] (Def.'s PFOF ¶ 75.) Because none of these actions

---

[5]Plaintiff complains that defendant took her company cell phone away from her while allowing others to keep company phones. Even assuming that loss of her cell phone was a tangible employment action for *McDonnell-Douglas* purposes, defendant adequately explains its reasons for the action. Defendant states that it took plaintiff's phone away because she was incurring excessive charges. (Carlson Dep. at 67-68.) Plaintiff counters that her son's use of her company

10

is an adverse employment action, none suffices to make out a prima facie case under *McDonnell-Douglas*.

Plaintiff complains that defendant required her to drive home at the end of the day and return to the job site the next day rather than permitting her to work an hour of overtime to finish the job. Plaintiff only specifies one instance when this happened; the overtime concerned was "a couple of hours." (Butler Dep. at 173-176.) Plaintiff admits she doesn't know whether her male co-workers were treated differently with respect to overtime.[6] (Butler Dep. at 179.) Accordingly, she has failed to make out a prima facie case of overtime discrimination. *Little*, 71 F.3d at 642 n. 3. Plaintiff's complaints that defendant stopped splitting the cost of a storage unit with her and that defendant did not reimburse her $4.00 for two MGD Lites fail for the same reason. Plaintiff offers no evidence that her male co-workers received these benefits after they were denied her. Plaintiff admitted at her deposition that she is not aware of anyone else who rented a storage facility for

_____

calling card, rather than her use of her company phone, was responsible for the excess charges. Plaintiff's explanation makes little sense. At her deposition, she testified that her son's use of her calling card occurred "a few years prior" to the loss of her cell phone. (Butler Dep. at 184.)

Assuming further, though, that defendant unfairly or mistakenly conflated cell phone and calling card charges, plaintiff's claim still fails. In order to show that an employer's proffered reasons for taking an action is pretextual, plaintiff must show that those reasons are "a lie, specifically a phony reason for some action." *Millbrook*, 280 F.3d at 1175. It does not suffice to show that the proffered reasons are "mistaken, ill considered or foolish[;] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Id.* (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.2000)). Plaintiff has shown, at best, that defendant took away her cell phone for ill-considered reasons. She has not shown that those reasons are a pretext for sex discrimination.

[6]Plaintiff later claims, without specifics, that three of her co-workers told her that they were treated differently with respect to overtime. (Butler Dep. at 179-180.) Her testimony, however, is inadmissible hearsay.

11

company equipment and supplies. (Butler Dep. at 188.) Plaintiff also failed to identify any male-co-worker who was reimbursed for alcoholic beverages. (Butler Dep. at 177.)

Plaintiff contends that she did not receive requested training while male co-workers did. The only two male co-workers plaintiff identifies as having received training are Lyle Freiberg and Jeff Boquist. Neither man is a "similarly-situated employee," *Little*, 71 F.3d at 642 n. 3, to plaintiff. *See Dandy v. United Parcel Service*, 388 F.3d 263, 274 (7th Cir. 2004) ("[A]n employee has failed to prove that she was similarly situated to her comparitors when she did not present evidence that she and coworkers shared the similar attributes, experience, education, and qualifications relevant to the [training] sought."). Both had associates' degrees and prior work experience with electronics, while plaintiff had only a high school diploma and no such experience. (Freiberg Dep. at 5-7; Tincher Decl. ¶ 4; Butler Dep. at 10.) Both also installed, serviced, and repaired systems–duties plaintiff did not perform. (Def.'s PFOF ¶¶ 15-16; Carlson Dep. at 30; Tincher Decl. ¶ 4; Butler Dep. at 33-34.). Because plaintiff has failed to identify any similarly-situated employees who received training that she did not, she has not made out a prima facie case of training discrimination.

## CONCLUSION

For the foregoing reasons, the court concludes that defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #24) is hereby **DENIED.**

12

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #19) is **GRANTED.** The clerk of court shall enter judgment accordingly.

Dated this ___31st___ day of October, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

13